853.0000195

## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## SHELBY DIVISION

| | |
|---|---|
| IN RE | ) Case No. 10-40125 |
| | ) |
| Richard Warren Finding and | ) Chapter 13 |
| Juanita Leatherman Finding, | ) |
| | ) |
| Debtors. | ) |
| | ) |

---

## MOTION FOR ADEQUATE PROTECTION AND TO MODIFY STAY

Peoples Bank (hereinafter "Peoples"), seeking relief against Richard W. Finding and Juanita Leatherman Finding, (hereinafter "Debtors"), moves the Court and respectfully shows as follows:

## PARTIES AND JURISDICTION

1.      Peoples is a state banking association duly organized and operating under the laws of the United State of North Carolina, with an office location in Newton, North Carolina.

2.      The Debtors are citizens and residents of Rutherford County, North Carolina.

3.      The Court has jurisdiction over this proceeding, pursuant to 28 U.S.C. § 1334, and the "Referral Order" entered herein by the Chief United States District Court Judge for the Western District of North Carolina. The Court also has jurisdiction over this proceeding, pursuant to 28 U.S.C. §§ 151 and 157(b) in that it is a "core proceeding."

## ALLEGATIONS

4.      On or about July 31, 2006, the Debtors executed and delivered to a certain Equity Line of Credit in the original sum of $85,000.00. A true copy of said Equity Line of Credit is appended hereto, identified as "Exhibit 1," and the same is incorporated herein by reference.

5.      Also on or about July 31, 2006, Debtors executed and delivered to a certain Deed of Trust, thereby granting a lien or encumbrance on the real property as described therein and known as 251 First Broad Drive, Bostic, NC 28018 (hereinafter "real property"). A true copy of said Deed of Trust is appended hereto, identified as "Exhibit 2," and the same is incorporated herein by reference.

6.      The foregoing Deed of Trust was properly filed on August 21, 2006 in Book 914 at Page 301 in the Register of Deeds of Rutherford County, North Carolina.

7.      Peoples is the current owner and/or holder of the Note and Deed of Trust.

8.      On or about February 25, 2010, the Debtors filed a petition under Chapter 13 of the United States Bankruptcy Code.

9.     The Debtors have defaulted under the payment provisions of the foregoing Equity Line of Credit and Deed of Trust.   After applying all funds received through April 7, 2010, the Debtors are due for their September 31, 2009 through March 31, 2009 monthly payments in the sum of $1,710.22.

10.     Since the filing of this petition, the Debtors have paid the following Payments:

| Year | Month Due | Date Paid | Amount Paid: |
|------|-----------|-----------|--------------|
| 2010 | February  |           | $   0.00     |
|      | March     |           | $   0.00     |

11.     As shown in the Debtors' Petition and Schedules, the Debtors intended to surrender the real property.

12.     As of April 15, 2010, the approximate balance due on said Equity Line of Credit was $86,955.94 plus attorneys fees and expenses.

13.     Upon information and belief, the fair market value of the foregoing real property is approximately $300,000.00, which is the value as shown on the Debtors' Petition and Schedules. Peoples has a first deed of trust lien for the amounts shown herein and Indymac Bank or One West Bank has the second deed of trust lien on the real property which secures a Note in the sum of $286,200.00.

14.     If Peoples is not permitted to foreclose its lien or encumbrance on the Debtors' real property, Peoples will suffer irreparable injury, loss and damage.

15.     Peoples hereby gives notice that it may submit a declaration or affidavit regarding any issue(s) raised in this contested matter in accordance with Rules 803(6), 902(11), and 902(12) of the Federal Rules of Evidence.

WHEREFORE, Peoples prays the Court as follows:

1.     That the Court grant Peoples adequate protection of its interest, pursuant to 11 U.S.C. §§ 361 and 363 or, in the alternative, that the automatic stay provisions of 11 U.S.C. § 362 be modified or terminated so that Peoples and any Trustee or Substitute Trustee may foreclose on the real property as shown herein and otherwise enforce its rights in the real property as permitted by North Carolina law and the Deed of Trust;

2.     That the preliminary hearing and the final hearing be consolidated into one;

3.     That the Court waive the ten (10) day period set forth in Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure and order that the automatic stay  is immediately terminated;

4.     That Peoples be allowed its reasonable attorneys' fees to the extent allowed under 11 U.S.C. § 506(b); and

5.     That Peoples have such other and further relief as to the Court may deem just and proper.

This the _14th_ day of April, 2010.

Rogers Townsend & Thomas, PC
Attorneys for Peoples Bank

By:_____
William Walt Pettit
NC Bar No.: 9407
2701 Coltsgate Road, Suite 300
Charlotte, N.C. 28211
Telephone: (704) 442-9500
Fax: (704) 442-8453
Email: notices@kellampettit.com

RICHARD W FINDING    JUANITA L FINDING

251 1ST BROAD DR
BOSTIC, NC 28018-

Loan Number _____
Date _____ 07-31-2006

### PEOPLES BANK
3310 SPRINGS ROAD NE
HICKORY, NC 28601



## EQUITY LINE OF CREDIT
## AGREEMENT AND TRUTH-IN-LENDING DISCLOSURES
### (Interest Only)

Your Equity Line of Credit (hereinafter "Home Equity Plan") is an open-end credit account (hereinafter "Account") at PEOPLES BANK (hereinafter "Bank") secured by a Deed of Trust of even date herewith on your real property (hereinafter "Home") described below. The provisions of this Deed of Trust are incorporated into this Agreement by reference. "You" and "your" refer to each person who agrees to this Home Equity Plan by signing this Agreement and using your Account.

Subject to the terms hereof you may borrow up to the limit of the "Line of Credit" granted by the Bank and designated below before the "Final Payment Date". The largest advance you may request at any one time is equal to the limit of your Line of Credit less the total of (i) previous advances not repaid and (ii) unrepaid sums advanced by the Bank to protect its interest in its security. The minimum advance you may receive is $100.00. Payments made by you will be applied first to pay outstanding finance charges, then to outstanding fees, charges and other amounts due to the Bank pursuant to this Agreement and your Deed of Trust other than advances and then to the remaining outstanding principal balance. Payments on your Account must be made in the manner described under the headings "Payments Required Before First Advance" and "Payments Required After First Advance." Any amounts unpaid, including principal, interest and other fees and charges hereunder, must be paid in full on the Final Payment Date. The minimum monthly payments required may not be sufficient to fully repay the principal balance of your Home Equity Plan by the Final Payment Date. If they are not, you will have to pay the entire balance in a single balloon payment. Advances on your Home Equity Plan Account may be obtained by using Line of Credit Checks or in any other way authorized in writing by the Bank.

Security: The Bank has or will take a lien on your Home at:    251 1ST BROAD DR BOSTIC, NC 28018-

---

Line of Credit: $    85,000.00            Final Payment Date:    07-31-2021

---

Payments Required Before First Advance:
You must pay a one-time nonrefundable origination fee in the amount of $ _____ 0.00 __.
You must pay a one-time fee for certain life of loan flood hazard certifications in the amount of $ _____.

Payments Required After First Advance:
You must make minimum monthly payments equal to all unpaid interest and other charges under your Account. You must pay the entire outstanding balance of your Account if it is $50 or less. Required monthly payments shall be made on or before the date set forth on your periodic monthly billing statement. All amounts outstanding must be paid in full on the Final Payment Date. All payments shall be delivered to the address set forth on the periodic billing statement, or, if no address is stated there, to the Bank's address set forth above.

---

FINANCE CHARGE: Except for any amounts described above under "Payments Required Before First Advance," there will be no finance charge until an advance is made under your Home Equity Plan. Interest, or a finance charge, will begin to accrue on each advance under your Home Equity Plan on the day that such advance is made. There is no time period within which credit extended may be repaid without incurring a finance charge.

Your ANNUAL PERCENTAGE RATE will be a variable rate indexed to the "Prime Rate" as hereinafter defined, plus a margin of ___25___ percentage points. The "Prime Rate" is that "Prime Rate" published in the "Money Rates" section of the *Wall Street Journal*, Eastern Edition, or if more than one "Prime Rate" is so published, the highest "Prime Rate" will be used. If the "Prime Rate" ceases to be published in the Wall Street Journal, the Bank will select an alternative "Prime Rate" or other rate deemed by it as a comparable index. The ANNUAL PERCENTAGE RATE is subject to change daily on the same day that there is a change in the reported "Prime Rate." The ANNUAL PERCENTAGE RATE divided by 365 will equal the daily periodic rate. The daily periodic rate, applicable at this time to compute your FINANCE CHARGE, is ___.0232876___ %; the corresponding ANNUAL PERCENTAGE RATE is ___8.50___ %. Any increase in the "Prime Rate" will result in an increase in both the daily periodic rate and the ANNUAL PERCENTAGE RATE applied to your Account and may result in an increase the amount of your required payment (including your final payment). Your maximum ANNUAL PERCENTAGE RATE will not exceed 16%, or the maximum rate allowed by law, whichever is less. The ANNUAL PERCENTAGE RATE includes only interest and not other costs.

The method used to compute the finance charge is as follows. The Bank will first take the beginning balance of your Account each day (excluding unpaid finance charges and other fees not added to principal), add any new advances, and subtract any payments or credits. This determines the daily balance. Next, all the daily balances for the billing period will be added together and then divided by the number of days in the billing period to determine the average daily balance. The average daily balance is multiplied by the number of days in the billing cycle and the product multiplied by the daily periodic rate to determine the finance charge for that billing period.

You are also being required to pay the following other fees in connection with this transaction:

| | | | |
|---|---|---|---|
| Credit report fees: | $_____ | Title insurance premiums: | $_____ |
| Appraisal fees: | $_____ | Attorney's fees: | $_____ |
| Survey fees: | $_____ | Recording fees: | $_____ |
| Other | _____ : | $_____ | |

1.   **PROMISE TO PAY:** You promise to pay the Bank all amounts advanced through your Home Equity Plan Account, together with all other fees and charges provided for herein, including, without limitation, finance charges calculated in the manner disclosed, and all other applicable charges and collection costs, including reasonable attorney's fees. Payments shall be made as provided herein. All amounts outstanding under this Home Equity Plan Agreement are payable on or before the Final Payment Date.

2.   **SECURITY:** To secure the payment of all amounts due the Bank under your Home Equity Plan Account you have granted the Bank a security interest in your Home. In addition to the other agreements contained in the Deed of Trust executed by you in connection herewith, you agree: not to obtain any advance under any prior recorded security interest on your Home; to pay on time and in full all amounts due under any contract secured by any prior lien on your Home; and that except with the prior consent of the Bank you will keep your Home free of all other liens and encumbrances, except such liens as may attach for property taxes not yet due. You agree to notify the Bank immediately if you propose to sell or transfer your Home. The Bank may deduct or set-off any amounts you owe the Bank under your Home Equity Plan Account against any account that you have with the Bank or any other debts the Bank owes you.

If any of the collateral securing this Home Equity Plan Account is your principal dwelling, the security interest provided in the Deed of Trust will not secure any indebtedness from you to the Bank incurred for personal, family or household purposes (as opposed to business, commercial or agricultural purposes) other than your obligations under this Agreement and the Deed of Trust, as they may be hereafter amended, modified, extended or replaced.

3.   **CREDIT LIMIT:** You agree not to borrow through your Home Equity Plan Account any amount greater than the Line of Credit agreed to by the Bank and stated herein, less the total of (i) previous advances not repaid and (ii) unpaid sums advanced by the Bank to protect its interest in its security. The Bank has no obligation to make advances in excess of this credit limit. If you are permitted to exceed your credit limit you agree to repay any excess at the time that your next payment is due.

4.   **TERMINATION AND SUSPENSION OR REDUCTION OF ADVANCES:** The Bank may terminate your Account and require you to pay the entire outstanding balance immediately, under the following circumstances: (1) if there is fraud or material misrepresentation by you in connection with your Home Equity Plan; (2) you fail to meet the repayment terms of this Agreement or (3) there is any action or inaction by you which adversely affects the Bank's security for repayment of advances under your Home Equity Plan, or any right of the Bank in your Home. In addition, the Bank may cancel your right to receive future advances (or reduce the credit limit of your Line of Credit) upon the occurrence of any of the three events mentioned above, or during any period in which: (a) the value of your Home that secures your Home Equity Plan declines significantly below its appraised value for the purposes of your Home Equity Plan (including, without limitation, any decline in the value of your Home such that the initial difference between your credit limit and the available equity in your Home, based upon its appraised value for purposes of your Home Equity Plan, is reduced by at least 50%); (b) the Bank reasonably believes that you will be unable to fulfill the repayment obligations

under your Home Equity Plan because of a material change in your financial circumstances (such as a significant decrease in your income); (c) you are in default of any material obligation under this Agreement or the Deed of Trust (including, without limitation, your failure to pay taxes and maintain insurance on your Home, your transfer of your Home without the Bank's consent, or your default under any Deed of Trust having priority over the Bank's lien on your Home); (d) the Bank is precluded by government action from imposing the ANNUAL PERCENTAGE RATE provided for in this Agreement; (e) the priority of the Bank's security interest in your Home is adversely affected by government action to the extent that the value of the security interest in your Home is less than 120% of your Line of Credit; (f) the Bank is notified by its regulatory agency that continued advances constitute an unsafe and unsound practice; or (g) the maximum ANNUAL PERCENTAGE RATE is reached. If your right to receive advances under your Home Equity Plan is cancelled or your Line of Credit is reduced because of a condition of the type described above, and if such condition ceases to exist and you want your credit privileges restored, you must ask us to restore your credit privileges.

5.   **MODIFICATION OF AGREEMENT:** The Bank may modify this Agreement as follows: (1) to change the interest rate adjustment index and margin, if the index becomes unavailable, to a new index having an historical movement similar to the original index and which, together with a new margin, will produce a similar interest rate; (2) to change this Agreement in a way unequivocally beneficial to you; or (3) to make an insignificant change to the terms of this Agreement (including, without limitation, (i) changes to the billing cycle date, payment due date and rounding practices, (ii) changes in the date on which index values are measured and (iii) changes in balance computation methods used to compute finance charges which result in insignificant differences in the finance charges you pay).

6.   **ADDITIONAL OBLIGATIONS AND AGREEMENTS:** You agree to maintain insurance on your Home against fire and other hazards (including flood insurance if the Bank requires it) in the form and in the amount required under the Deed of Trust securing your Account or otherwise required by the Bank and containing a standard mortgage clause, and to provide the Bank with a copy of such policy. You may obtain property insurance from anyone you want that is acceptable to the Bank. You also agree to provide to the Bank from time to time upon its request, additional financial information including, without limitation, information regarding your employment, income, assets, liabilities, and information affecting the title to and value of the Home securing this Home Equity Plan.

If this is a joint Account each of you will be jointly and individually responsible for the payment of all obligations due under your Home Equity Plan, and each of you authorizes the other to obtain an advance individually, and each agrees to pay the Bank under the terms hereof with respect to all such advances. You agree that the Bank may suspend all rights to future advances upon the request or death of any party to this Agreement and that each such party shall be deemed the agent of the other in connection with all rights and obligations hereunder. Notwithstanding the foregoing, the Bank may release one or more of you from any obligation in connection with your Home Equity Plan, without releasing the other party or parties to this Agreement. In addition, the Bank may delay or waive the enforcement of any of its rights hereunder against one or more of the parties obligated without waiving or losing other rights, or rights against others.

7.   **DEFAULT:** If you fail to pay any amount due hereunder, or if any other of the grounds for termination listed in paragraph 4 occurs, the Bank may declare your Home Equity Plan Account to be in default, terminate your Account and demand immediate payment in full of all amounts due hereunder including, without limitation, all principal, interest, fees, default charges, or other amounts recoverable by the Bank hereunder or under the Deed of Trust executed in connection herewith. The following shall be deemed action or inaction by you which adversely affects the Bank's security for repayment of amounts due under your Home Equity Plan, or action or inaction which adversely affects the Bank's right in the security interest given in your Home: (1) the taking of all or any part of the property constituting your Home through any power of eminent domain; (2) failure to keep such Home insured as herein agreed; (3) failure to pay any taxes, or any other increase in the amount of prior liens against your Home in favor of other parties; (4) permitting or suffering the commission of waste, or the destructive use of your Home, or failure to maintain such Home to the extent that the value thereof, or the Bank's security interest therein, is adversely affected; or (5) foreclosure by a lienholder on your Home who has an interest senior, or superior, to that of the Bank.

Any amount due to the Bank which is unpaid, including, without limitation, amounts due for default charges, fees, or amounts advanced by the Bank as authorized by the Deed of Trust on your Home, may be added to your Account balance and thereupon shall be subject to a finance charge as an advance under the Home Equity Plan.

The Bank may waive or delay enforcing any of its rights under this Agreement at any time without limiting or precluding the exercise of any or all of its rights in the future.

8.   **ASSIGNMENT:** You may not assign your rights or your obligations hereunder without the Bank's prior consent. The Bank may, at its option, assign its rights under this Agreement and under any Deed of Trust given in connection herewith.

9.   **APPLICABLE LAW:** To the extent that the parties may select applicable law, this Agreement shall be subject to and construed and enforceable under the law of North Carolina. If the law makes any term hereof unenforceable, all other terms will remain in effect.

10.    **QUESTIONS AND BILLING ERRORS:** See the topic "YOUR BILLING ERROR RIGHTS – KEEP THIS NOTICE FOR FUTURE USE" for important information concerning your right to ask questions about your Account and to dispute errors on your statement.

11.    **TAX DEDUCTIBILITY:** You agree that the Bank makes no representation regarding the deductibility of interest and charges for tax purposes and you have relied on no information provided by the Bank with respect to those issues. You should consult a tax advisor regarding the deductibility of interest and charges under the Home Equity Plan.

The undersigned have executed this Agreement under seal to agree to the terms of the Home Equity Plan described above and as further explained on the attached sheet, and acknowledge receipt of a completed copy of this document and the attachment.

| | | |
|---|---|---|
| _Beth LaBarbera_ | _Richard W. Finding_ (SEAL) | _7-31-06_ |
| Witness | Borrower's Signature | Date |
| _Beth LaBarbera_ | _Juanita L. Finding_ (SEAL) | _7-31-06_ |
| Witness | Borrower's Signature | Date |
| | (SEAL) | |
| Witness | Borrower's Signature | Date |
| | (SEAL) | |
| Witness | Borrower's Signature | Date |

## YOUR BILLING RIGHTS - KEEP THIS NOTICE FOR FUTURE USE

This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

NOTIFY US IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR STATEMENT. If you think your statement is wrong, or if you need more information about a transaction on your statement, write us on a separate sheet at the address listed on your statement. Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first statement on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter give us the following information:
- Your name and account number.  • The dollar amount of the suspected error.  • Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

If you have authorized us to pay amounts due under your Home Equity Plan automatically through your deposit account you can stop the payment on any amount you think is wrong. To stop the payment your letter must reach us three business days before the automatic payment is scheduled to occur.

YOUR RIGHTS AND OUR RESPONSIBILITIES AFTER WE RECEIVE YOUR WRITTEN NOTICE. We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe the statement was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to send statements to you for the amount you question, including finance charges, and we can apply any unpaid amount against your credit limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your statement that are not in question.

If we find that we made a mistake on your statement, you will not have to pay any finance charges related to any questioned amount. If we did not make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case we will send you a statement of the amount you owe and the date that it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your statement. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we do not follow these rules, we cannot collect the first $50 of the questioned amount, even if your statement was correct.

Initials

**ⓐCOPY**

Doc ID: 001189940010 Type: CRP
Recorded: 08/21/2006 at 01:22:53 PM
Fee Amt: $41.00 Page 1 of 10
Instr# 200600002714
Rutherford County, NC
Faye H. Huskey Register of Deeds

BK 914 PG 301-310

### DEED OF TRUST
(North Carolina – Future Advance and Future Obligations)

Prepared by: Richard F. Williams, Byers, Martelle & Williams, PLLC
P.O. Box 530, Rutherfordton, NC 28139
After recording, mail to:

THIS DEED of TRUST is dated as of the __31__ day of July 2006. In this Deed of Trust.

- The "Grantor" is/are:
  Richard W. Fleding and wife, Jozelia L. Fleding
- The "Trustee" is:
  Lance A. Sellers
- The "Lender" is
  People's Bank, with an address of Post Office Box 467, Newton, NC 28658
- The "Borrower" is each person or entity that signs, assumes, or is otherwise obligated to pay any of the Secured Obligations identified in section 2 of this Deed of Trust.

FOR GOOD AND VALUABLE CONSIDERATION, including the obligations now or hereafter to be secured by this Deed of Trust and the sum of one dollar and other good and valuable consideration paid to Grantor by Trustee and Lender, the receipt and sufficiency of which are hereby acknowledged, Grantor agrees and covenants with Trustee and Lender as follows:

1.  **Maximum Principal Amount Secured.** This is a Future Advance Deed of Trust subject to the provisions of Article 7 of Chapter 45 of the North Carolina General Statutes, as the same may be amended from time to time. This Deed of Trust is given wholly or partly to secure (i) Borrower's present obligations to Lender identified in section 2A of this Deed of Trust, and (ii) Borrower's future obligations to Lender which may, from time to time, be incurred hereunder. Future obligations secured by this Deed of Trust may be incurred by Borrower within a period of 15 years from the date of this Deed of Trust.

- The maximum principal amount, including present and future obligations, which may be secured by this Deed of Trust at any one time is:                    $155,900.00

The amount of present obligations secured by this Deed of Trust is the sum of those Secured Obligations identified in section 2A of this Deed of Trust. This Deed of Trust secures all of the Secured Obligations identified in section 2 of this Deed of Trust. However, if at any time the aggregate outstanding principal balance of the Secured Obligations exceeds the maximum principal amount that may be secured by this Deed of Trust at any one time as stated above, the excess shall not be secured by this Deed of Trust. Nothing in this Deed of Trust shall be construed as a commitment to make additional or future loans or advances in any amount. Any such commitment shall require a separate writing signed by Lender.

2.  **Obligations Secured.** Subject to the maximum principal amount which may be secured by the Deed of Trust at any one time as stated in section 1 above, this Deed of Trust secures the following obligations with interest thereon as specified therein (each individually a "Secured Obligation and collectively, the "Secured Obligations"), the terms of each of which are incorporated herein by reference:

## SCHEDULE "A"

### DESCRIPTION OF PROPERTY

BEING the full contents of Lot No. 9, First Broad Acres, containing 3.89 acres, more of less, as shown on a plat recorded in Plat Book 16 at Page 84 of the Rutherford County North Carolina Public Registry, reference to which is hereby made for a more particular description.

Being the same and identical property as described in deed from First Broad Acres, Inc., a North Carolina corporation to Richard W. Finding and wife, Juanita L. Finding and recorded on October 2, 2000 in Deed Book 762 at Page 344, Rutherford County Registry.

A.  Borrower's present obligation(s) to Lender, which is/are evidenced by that revolving credit agreement with an initial credit limit of $85,000.00 of even date herewith payable to the order of Lender entitled **Equity Line of Credit agreement and Truth in Lending Disclosures** that is signed by the following maker(s) or borrower(s): Richard W. Finding and wife, Juanita L. Finding; and

B.  Any note, lease, contract, guaranty, agreement, obligation and/or other evidence of debt signed by any Grantor or Borrower in the future that specifically provides that it is secured by this Deed of Trust; and

C.  All extensions, renewals, modifications, amendments, restatements, consolidations, substitutions or refinancings of or for any or all of the foregoing.

In addition, this Deed of Trust secures (a) the performance by Grantor of Grantor's obligations under this Deed of Trust, and (b) all payments made, sums advanced and expenses incurred by Lender (plus interest thereon at the same rate as the principal indebtedness secured hereby) (i) to protect its interest under this Deed of Trust, (ii) to protect its interest in the collateral, (iii) to preserve and protect the value or condition of the collateral, or (iii) to perform any of Grantor's covenants, agreements or obligations contained in this Deed of Trust. Except to the extent those instruments identified in subsection B above are required to state that they are secured by this Deed of Trust, future advances need not be evidenced by written instruments or notations signed by Borrower stipulating that such advances are secured by this Deed of Trust. This Deed of Trust secures an obligation incurred for the construction of an improvement on land.

Without the knowledge, consent or joinder of Grantor or Trustee, Lender may (but shall not be required) at any time and from time to time record for informational purposes in the Office of the Register of Deeds of the county in which this Deed of Trust is recorded one or more statements identifying the Secured Obligations that are secured by this Deed of Trust at the time the statement is prepared. This Deed of Trust shall have priority with respect to each Secured Obligation (whether now in existence or arising in the future) from the time and date this Deed of Trust is recorded.

3.  **Modifications, etc.**  Grantor agrees that any one or more of the Secured Obligations may be changed from time to time by agreement between the holder(s) thereof and the party or parties primarily obligated thereon. Changes may include the extension, renewal, modification, amendment, restatement, consolidation, substitution or refinancing of the obligation. For example, the holder(s) and party or parties primarily obligated thereon may agree to (a) increase or decrease the interest rate, (b) convert the obligation to or from a closed-end or open-end obligation, (c) convert the obligation to or from a fixed interest rate obligation or an adjustable interest rate obligation, (d) increase or decrease the payment amount, (e) change the payment schedule, (f) extend or shorten the time during which future advances may be made, (g) amortize a balloon payment, (h) extend or shorten the maturity date, and/or (i) any combination of the foregoing. Each Secured Obligation as changed from time to time shall continue to be secured hereby with a priority as of the date of the recording of this Deed of Trust. However, the aggregate outstanding principal balance of all such Secured Obligations shall not, at any one time, exceed the maximum principal amount stated in section 1 above. In addition, Grantor's obligations under this Deed of Trust shall not be diminished or cancelled by any extension, change or modification in the terms, time, manner or method of payment of any of the Secured Obligations or by the release of any collateral or of any obligor, guarantor, or endorser of any of the Secured Obligations, whether or not such changes or actions are consented to by Grantor. Grantor specifically waives any right Grantor has or may hereafter acquire to be released from liability, to the release of any or all of the premises from the lien of this Deed of Trust or to marshal assets pursuant to Section 45-45.1, Section 25-3-605 or Chapter 26 of the North Carolina General Statutes. Payments received by Lender on any Secured Obligation and the proceeds from any foreclosure sale or other disposition of the premises described in this Deed of Trust may be applied to the Secured Obligations and other obligations secured by this Deed of Trust in such manner and in such order as Lender, in its absolute discretion, deems appropriate. Lender shall not be required to apply any such payment or proceeds in a ratable or pro rata manner.

4.  **Conveyance.**  For the consideration and for the purposes recited above, Grantor does hereby bargain, sell, grant and convey to Trustee and Trustee's heirs, personal representatives, assigns and successors in trust, all of that real property described below or, if no real property is described below, all of that real property described in Schedule "A" attached hereto and incorporated herein by reference.

Together with (i) all timber "standing and cut," crops, crop allotments, crop contracts, government support payments, payments in kind and other similar contracts and payments made to crop producers; (ii) all buildings, structures, and improvements now or hereafter affixed to or placed or erected on the property; (iii) all fixtures, equipment and improvements now or hereafter acquired, attached to or reasonably necessary to the use of such property; and (iv) all easements, rights of way, hereditaments and

appurtenances thereunto belonging, all of the said real and personal property being hereinafter referred to collectively as the "premises."

TO HAVE AND TO HOLD the same, with all rights, privileges and appurtenances thereunto belonging, to the said Trustee and said Trustee's heirs, personal representatives, assigns and successors in trust, upon the trusts, terms and conditions and for the uses and purposes set forth in this Deed of Trust.

5.   **Warranty of Title.**  Grantor warrants that (i) Grantor holds good and marketable title of record to the premises in fee simple, free and clear of all liens and encumbrances other than those set forth in the description of the premises or in any title insurance policy, title report or final title opinion issued in favor of, and accepted by, Lender in connection with this Deed of Trust, (ii) Grantor has the full right, power and authority to execute and deliver this Deed of Trust to Lender, and (iii) Grantor will warrant and defend the title to the premises against the lawful claims of all persons.  If any action or proceeding is commenced that questions Grantor's title, the interest of Trustee or Lender in or to this Deed of Trust or the priority of the lien of this Deed of Trust, Grantor shall defend the action at Grantor's expense.  Grantor further warrants that the premises and Grantor's use of the premises comply and at all times shall comply with all applicable laws, ordinances and regulations of governmental authorities and all applicable restrictive covenants.

6.   **Payment of Secured Obligations.**  Grantor, if a Borrower, shall pay and perform the Secured Obligations as and when due.  Any Grantor that is not a Borrower executes this Deed of Trust solely to convey Grantor's interest in the premises as security for the Secured Obligations, and by signing this Deed of Trust such Grantor assumes no personal liability for payment of Borrower's debts or for the performance of Borrower's obligations.  Nothing in this Deed of Trust, however, diminishes, limits or affects Grantor's liability to Lender under any separate guaranty or any other instrument.  Grantor agrees that Lender and any Borrower may extend, modify, forbear, or make any other accommodations with regard to the terms of any of the Secured Obligations without Grantor's knowledge or consent and without releasing Grantor or diminishing, modifying or affecting Grantor's obligations under this Deed of Trust.

7.   **Taxes and Other Charges.**  Grantor shall pay all taxes, assessments, fines, impositions and charges that are or may become a lien on the premises and all leasehold payments and ground rents, if any (collectively, the "charges") when due and before any penalty or interest shall be charged thereon.  If Lender requires, Grantor shall furnish to Lender certificates or receipts showing full payment of such charges.  If Grantor fails to pay such charges as and when due, Lender may, at its option, advance the funds necessary to pay such charges.

8.   **Insurance and Casualty Loss.**

A.   Grantor shall keep all buildings and other improvements now existing or hereafter installed, placed or erected on the premises continuously insured against loss by fire, theft, malicious mischief, vandalism, hazards included within the term "extended coverage" and any other hazards, including floods and flooding, for which Lender requires insurance.  This insurance shall be maintained in an amount equal to the maximum insurable value of the improvements or such lesser amount as may be approved by Lender, but in any event in an amount sufficient to avoid application of any coinsurance provision.  The insurance carriers providing the insurance shall be chosen by Grantor subject to Lender's approval, which shall not be unreasonably withheld.  All insurance policies and renewals shall be in such form as is acceptable to Lender and shall include (i) a standard "mortgagee" clause in favor of Lender, (ii) a stipulation that coverage will not be cancelled or diminished without at least 15 days' prior written notice to Lender, and (iii) an endorsement providing that coverage in favor of Lender will not be impaired by any act, omission or default of Grantor or any other person.  If it is determined at any time that all or any part of the premises is located within a special flood hazard area as determined by the Federal Emergency Management Agency, Grantor shall obtain and maintain such Federal Flood Insurance as may be required by Lender.  Lender shall have the right to hold all insurance policies and renewals.  If Lender requires, Grantor shall promptly give to Lender all receipts of paid premiums and renewal notices.  If Grantor fails to maintain insurance coverage as required herein, Lender may (but shall not be required to) obtain insurance coverage to protect Lender's rights in the premises and/or advance funds necessary to pay Grantor's insurance premiums.  Lender shall not be liable to Grantor, Borrower or any other person if Grantor (or Lender) fails to procure and maintain casualty, flood or any other insurance, even if such insurance is required by law.

B.   In the event of any casualty loss, Grantor shall give prompt written notice thereof to the insurance carrier and Lender.  Lender may make proof of loss if not made promptly by Grantor.  Lender shall have the right to claim, receive and collect any proceeds of such insurance, and Grantor hereby assigns to Lender all rights to such insurance proceeds.  Unless all of the conditions specified below are continuously met, the insurance proceeds may be applied by Lender, at its option, to the satisfaction

of the Secured Obligations and other obligations secured by this Deed of Trust (regardless of whether the same are then payable), or to the restoration and repair of the damaged premises. However, if all of the following conditions are continuously met, the insurance proceeds shall be deposited in a special escrow account under Lender's exclusive control to be applied by Lender to the restoration and repair of the damaged premises:

1) Grantor notifies Lender in writing of Grantor's desire and intent to restore and repair the damaged premises.

2) There exists no event of default or any other event or condition which, on the giving of notice or the passage of time, or both, would constitute an event of default under the terms of this Deed of Trust or any Secured Obligation.

3) No lease of the premises or any part thereof has terminated or may be terminated by reason of the casualty loss or the restoration and repair of the damaged premises.

4) Lender did not pay the insurance premium or advance the insurance premium on Grantor's behalf, regardless of whether the amount paid or advanced by Lender is added to the indebtedness secured hereby (i.e., the insurance premium must have been paid by Grantor).

5) If the insurance proceeds deposited to the escrow fund are insufficient to pay the anticipated cost of restoring and repairing the damaged premises in full, Grantor shall from time to time deposit to the escrow account such additional sums as may be required by Lender to pay the anticipated costs of the restoration and repair of the damaged premises in full. Funds deposited by Grantor may, at Lender's option, be applied to the restoration and repair of the damaged premises before insurance proceeds.

6) Grantor presents evidence satisfactory to Lender that (i) such restoration and repair are economically feasible, (ii) Lender's security is not and will not be impaired thereby, (iii) Borrower has the ability and willingness to repay the Secured Obligations during the period of restoration and repair, and (iv) the resulting value of the premises following the restoration and repair of the premises will not, in Lender's sole judgment, be less than the value of the premises before the casualty loss.

7) Grantor submits plans and specifications, the identity of any proposed contractor(s) and each contract for the repair and restoration of the damaged premises to Lender for Lender's approval. All such plans and specifications, the contractor(s) and each contract or agreement for the repair or restoration of the damaged premises shall be subject to Lender's written approval. However, in no case shall Lender be required to be a party to any such contract or agreement.

8) Lender shall not incur any liability to any other person as a result of such use or release of insurance proceeds.

9) The restoration and repairs commence, progress, and are completed within a reasonable period of time, as determined by Lender in its sole discretion.

Any funds remaining in the escrow account after restoration and repair of the damaged premises may be applied by Lender toward the satisfaction of the Secured Obligations and other obligations secured by this Deed of Trust, regardless of whether the same are then payable. The application of insurance proceeds toward the satisfaction of the Secured Obligations shall not extend or postpone the due date of payments due under the terms of any Secured Obligation.

In the event of a foreclosure of this Deed of Trust, a deed in lieu of foreclosure, or any other transfer of title to the premises in satisfaction of any indebtedness or obligation secured hereby, all right, title and interest of Grantor in any insurance policies then in force and any insurance proceeds resulting from damage to the premises which occurred prior to such foreclosure or transfer, shall pass to Lender or its grantee or to the purchaser of the premises, as the case may be.

9. **Condemnation.** If the premises or any part thereof is taken under power of eminent domain, Grantor shall give immediate written notice to Lender and Lender shall have the right to receive any award or damages (direct or consequential) payable by reason of such taking. The right to such award or damages is hereby assigned by Grantor to Lender. Lender may, at its option, apply the amount so received, or any part thereof, toward the satisfaction of the Secured Obligations or toward the alteration, repair or restoration of the premises.

10. **Occupancy, Repair and Maintenance.** Until an event of default occurs under this Deed of Trust, Grantor may (i) remain in possession and control of the premises, (ii) use, operate and manage the premises, and (iii) collect rents from the premises. Grantor shall keep all buildings and improvements now or hereafter included in the premises in good order and repair and shall

comply with all applicable restrictions and governmental regulations respecting the premises and their occupancy and use. Grantor shall not destroy, damage or impair the premises, allow any improvements on the premises to deteriorate, or commit or permit any waste. Grantor shall not cut or permit the cutting of any timber or alter, add to, or remove any of the buildings or improvements on the premises without Lender's written consent. Grantor shall comply fully with all leases affecting the premises. Lender and its agents may make reasonable entries upon and inspections of the premises.

11. **Collateral Assignment of Leases, Rents, Issues and Profits.** Grantor hereby assigns to Lender as additional security for the Secured Obligations and other obligations secured by this Deed of Trust all of Grantor's right, title and interest in and to any and all (i) existing or future leases affecting the premises ("leases") and (ii) rents, issues, profits and emoluments from the premises ("rents"). Grantor hereby authorizes Lender and Lender's agents upon the occurrence of any event of default to (i) enter upon and take possession of the premises or any part thereof, (ii) collect all rents, (iii) rent the premises for the account of Grantor at any rental rate satisfactory to Lender, (iv) deduct from such rents all necessary and reasonable costs and expenses of collection and administration, and (v) apply the remainder of such rents toward the satisfaction of the Secured Obligation and other obligations secured by this Deed of Trust. In addition to the foregoing, immediately upon default hereunder, or upon proceedings being commenced for the foreclosure of this Deed of Trust, Lender may, at its option, apply *ex parte* for, and as a matter of right be entitled to, the appointment of a receiver of the rents, without notice and without reference to the value of the premises or the solvency of any persons or entities liable hereunder. This is a collateral assignment of leases, rents, issues and profits made pursuant to Section 47-20 of the North Carolina General Statutes, and Lender may exercise any and all rights and remedies set forth therein.

12. **Security Agreement; Financing Statements.** To further secure the repayment and performance of the Secured Obligations and other obligations secured by this Deed of Trust, Grantor hereby grants to Lender a Uniform Commercial Code security interest in all building materials, building supplies, fixtures, inventory and equipment (other than household goods) now owned or hereafter acquired by Grantor, together with all attachments, accessories and accessions thereto and replacements thereof, located at or upon or intended for use, used, or useable in the construction, occupancy, operation or maintenance of improvements constructed or to be constructed on the real property described or identified in section 4 of this Deed of Trust. With respect to such personal property, Lender shall have all the rights of a secured creditor under the Uniform Commercial Code as adopted and amended from time to time in the State of North Carolina. In addition to recording this Deed of Trust Lender may, at any time and without further authorization from Grantor, file such financing statements as Lender deems appropriate to perfect its security interest in the personal property described in this section.

13. **Prior Liens.** If all or any part of the premises is or becomes subject to a lien which has priority or may attain priority over the lien of this Deed of Trust, Grantor shall promptly discharge the lien or, with Lender's prior written consent: (i) agree in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender and perform fully in accordance with such agreement; (ii) contest the lien in good faith by, or defend against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien; or (iii) secure from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Deed of Trust.

14. **Hazardous Materials.**

A.  For purposes of this Deed of Trust, (i) "Hazardous Materials" means materials that may cause or pose a present or potential threat to human health or the environment because of their quantity, concentration or physical, chemical or infectious characteristics, including, without limitation, flammable, explosive or radioactive materials, petroleum products, asbestos and any hazardous, toxic or dangerous waste, substance or material identified as hazardous by the Environmental Protection Agency or defined as such in (or for purposes of) any Environmental Laws; (ii) "Environmental Laws" means any current or future governmental law, regulation, ruling or order relating to the protection of human health or the environment; and (iii) "on the premises" includes in, on, at, under, from or in any way affecting the premises.

B.  Grantor represents, warrants, covenants and agrees that:

1)  To the best of Grantor's knowledge, no Hazardous Materials have been used or placed on the premises in violation of any applicable Environmental Laws.

2)  The premises are presently in compliance with all Environmental Laws, no notice has been received with regard to any Hazardous Materials on the premises, and no action, investigation or proceeding is pending or, to Grantor's knowledge, threatened that seeks to enforce any right or remedy against Grantor or the premises under any Environmental Laws.

3)  Grantor shall not cause or permit (i) the installation, storage, treatment, manufacture, or use of Hazardous Materials on the premises in violation of Environmental Laws, or (ii) the disposal, discharge or release of Hazardous Materials on the premises.

4)  Grantor shall (i) cause the premises to comply at all times with applicable Environmental Laws, (ii) keep the premises free and clear of any liens imposed pursuant to any Environmental Laws, and (iii) obtain, maintain, and at all times comply with all licenses, permits and other governmental or regulatory actions necessary for the premises to comply with applicable Environmental Laws.

5)  Grantor shall (i) give Lender prompt written and oral notice if Grantor receives any notice with regard to Hazardous Materials on the premises, (ii) conduct and complete all investigations, sampling and testing, and all remedial, removal and other actions necessary to clean up and remove all such Hazardous Materials on the premises in accordance with all applicable Environmental Laws, and (iii) provide to Lender, and has an ongoing obligation to provide to Lender, copies of all information in its possession, under its control, or available to it concerning the environmental condition of the premises and property adjacent to the premises.

6)  Grantor shall notify Lender of any material change in Grantor's activities or operations on the premises and permit Lender and Lender's agents to go on the premises to conduct such investigations, tests, and inspections as Lender deems appropriate to ensure Grantor's continued compliance with the requirements of this section and with all applicable Environmental Laws.

C.  Lender may take such actions and advance such sums as it deems necessary or appropriate to prevent or to remedy any activity, operation or occurrence on the premises which constitutes or may constitute a breach of this section and/or to prevent or remedy the disposal, discharge or release or the threatened disposal, discharge or release of Hazardous Materials on the premises. Sums paid by Lender under this section shall be deemed advances authorized and made under Section 15 of this Deed of Trust.

D.  Grantor agrees to indemnify Lender and Trustee and hold Lender and Trustee harmless from and against all costs, expenses, losses, liabilities, damages, injuries and claims of any kind or nature arising out of, with respect to, or as a direct or indirect result of: (i) the presence on the premises or the escape, spillage, discharge or release on or from the premises of any Hazardous Materials, whether or not caused by Grantor, (ii) the violation of any Environmental Laws applicable to the premises, whether or not caused by Grantor, (iii) the failure by Grantor to comply fully with the terms and provisions of this section, or (iv) any representation made by Grantor under this section being false or untrue in any material respect. This indemnity and hold harmless provision extends, without limitation, to (i) any diminution in the value of the premises, (ii) damages for the loss or restriction on use of the premises or any portion thereof, (iii) damages arising from adverse impact on the marketing of the premises or any portion thereof, (iv) damages to natural resources, personal injuries, and sums paid in settlement of claims, court costs, attorneys' fees, and fees for consultants or experts, and/or (v) costs incurred in connection with the investigation of site conditions, sampling and testing, and any remedial, removal or other cleanup work required by any governmental agency or entity because of the presence of Hazardous Materials on the premises.

E.  The obligations and liabilities of Grantor under this section shall survive the foreclosure of or the exercise of a power of sale under this Deed of Trust, the delivery of a deed in lieu of foreclosure, the cancellation or release of record of this Deed of Trust, the release of any or all of the premises from the lien of this Deed of Trust, or the payment and cancellation of the Secured Obligations.

15.  **Advances and Expenses.** Without regard to whether (a) an event of default has occurred under this Deed of Trust, (b) the Grantor has performed Grantor's obligations under this Deed of Trust, or (c) there is a legal proceeding threatened or pending that may affect the validity or priority of the lien of this Deed of Trust, Lender may do and pay for whatever it deems necessary or appropriate to (i) satisfy any or all of Grantor's obligations under this Deed of Trust, (ii) preserve and protect the value and condition of the premises, (iii) protect Lender's rights under this Deed of Trust, and (iv) sustain the lien of this Deed of Trust and its priority. Lender's actions may include (but shall not be limited to) the payment of sums to (i) pay insurance premiums, taxes, assessments, fines, impositions, charges, leasehold payments and ground rents relating to the premises, (ii) pay any lien or claim of lien that has, may have or may obtain priority over this Deed of Trust, (iii) prosecute or defend any legal action or proceeding relating to the premises, the lien of this Deed of Trust, or any of the Secured Obligations, (iv) obtain periodic updates of appraisals or new appraisals of the premises, (v) obtain environmental studies and assessments including, without limitation, sampling and testing, (vi) enter upon the premises and inspect, protect, preserve, repair and/or restore the premises, (vii) comply with all legal

and regulatory requirements imposed upon Lender to protect the premises as collateral or to analyze the value or condition thereof, and (viii) pay reasonable attorneys' fees and other costs, fees and expenses incurred on behalf of Lender and/or Trustee arising from any of the foregoing. All costs, fees and expenses actually incurred by Lender and/or Trustee and payments made by Lender pursuant to this section shall (i) be deemed necessary expenditures made for the preservation of the security, (ii) be secured by this Deed of Trust, (iii) bear interest at the same rate as the principal indebtedness secured hereby, and (iv) be payable immediately upon demand or as Lender may determine. Nothing herein shall be construed to allow Lender to collect any costs, fees or expense otherwise prohibited by applicable law. After any such advances are made, Lender may apply any funds received hereunder to advances, principal, or interest as Lender may determine. Lender shall not be held to have waived any rights accruing to Lender by payment for Grantor of any sum hereunder.

16. **Due on Sale Provision; Acceleration.** Lender may, at its option, require the immediate payment in full of the Secured Obligations and all other sums secured by this Deed of Trust upon the sale, transfer, conveyance or encumbrance of all or any part of the premises or any legal or beneficial interest in the premises without Lender's prior written consent, whether voluntary, involuntary, by operation of law or otherwise, but excluding (i) the voluntary creation by Grantor of a lien or encumbrance subordinate to this Deed of Trust, (ii) the creation of a purchase money security interest for household appliances, and (iii) the grant of any leasehold interest of three (3) years or less duration which does not contain an option to purchase. If the premises include Grantor's residence, this section shall be subject to any applicable restrictions imposed by federal law or regulation (including 12 CFR Part 591) upon Lender's right to accelerate under this due-on-sale clause.

If Lender exercises this option, Lender shall give Grantor (and Borrower, if different) notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given within which all of the Secured Obligations and other obligations secured by this Deed of Trust must be paid in full. If such sums are not paid in full prior to the expiration of that period, the obligations shall be deemed in default for failure to pay the obligations as and when due, and Lender may invoke the remedies permitted by this Deed of Trust (including foreclosure) without further notice or demand. Lender's option to accelerate under this section may be exercised for any reason, including for the sole purpose of increasing the interest rate on the Secured Obligations, but it may not be exercised if prohibited by any applicable law or regulation. Any acceleration of the indebtedness secured hereby may, at Lender's option, be rescinded by Lender's written acknowledgement to that effect. Any partial payment accepted by Lender after acceleration of the indebtedness secured hereby shall be applied toward the satisfaction of the Secured Obligations and other obligations secured by this Deed of Trust but shall not operate as a waiver or rescission of the acceleration without Lender's express written consent.

17. **Default.** This Deed of Trust shall be in default upon the happening of any of the following "events of default":

A. Any Secured Obligation is not paid or performed as and when due or is otherwise in default.

B. Grantor fails to keep, perform or observe any covenant, agreement, term or condition that Grantor is required to keep, perform, or observe under this Deed of Trust, or Grantor fails to perform any of Grantor's obligations or duties under the terms of this Deed of Trust.

C. An event or condition occurs that would allow Lender to accelerate any Secured Obligation or would constitute a default or an event of default under the terms of (i) any Secured Obligation, (ii) any loan agreement, security instrument, or other document evidencing, guaranteeing or securing any Secured Obligation, or (iii) any prior or subordinate deed of trust affecting the premises.

D. Unless known and approved by Lender at the time this Deed of Trust is recorded, the existence of any lien, charge or encumbrance that impairs the validity of this Deed of Trust or has priority over the lien of this Deed of Trust.

E. Any proceeding is instituted to enforce any lien, charge or encumbrance against any of the premises, whether such lien has priority over or is subordinate to the lien of this Deed of Trust.

F. The cutting of any timber on the premises or the actual or threatened removal, demolition or waste of any of the buildings or improvements now or hereafter included in the premises without Lender's prior written consent.

G. Any civil or criminal forfeiture action or proceeding is begun that, in Lender's good faith judgment, could result in forfeiture of the premises or any part thereof or otherwise materially impair the lien or the priority of the lien of this Deed of Trust.

H.  Grantor abandons the premises, is declared bankrupt or insolvent, or dissolves, liquidates or ceases to exist as a legal entity.

I.  The actual or threatened presence, use, disposal, discharge or release of any Hazardous Materials on the premises in violation of this Deed of Trust or any applicable Environmental Laws.

Except as provided below, if an event of default is curable and no notice has been previously given by Lender of the same or any other event of default within the preceding 12 months, Grantor shall have 30 days following Lender's giving of written notice of default within which to cure the default. If the default is curable but cannot reasonably be cured within the 30-day cure period, and if Grantor commences to cure the default during the 30-day cure period and diligently proceeds thereafter to cure such default, then the cure period shall be extended for a reasonable time not to exceed an additional 30 days (for a total of 60 days) in order to provide Grantor the opportunity to cure the default. However, Grantor shall not be entitled to notice of default or the opportunity to cure a default if Lender has previously given notice of a default within the preceding 12 months or if the default occurs because of (i) failure to pay or perform any Secured Obligation as and when due, (ii) failure to keep any insurance on the premises required by this Deed of Trust continuously in full force and effect, or (iii) the occurrence of any waste, damage or injury to the premises that substantially reduces the value of the premises, or the immediate threat of any such waste, damage or injury. If Grantor is not entitled to notice of default and the opportunity to cure, or if the default is not cured during any applicable cure period following the giving of any required notice of default, Lender may invoke the remedies permitted by this Deed of Trust (including foreclosure) without further notice or demand.

18.  **Power of Sale.**  If any event of default occurs for which Grantor is not entitled to notice of default and the opportunity to cure, or if any event of default occurs that is not cured during any applicable cure period following the giving of any required notice of default, Lender may request Trustee to exercise this power of sale. Upon such request, it shall be lawful for and the duty of Trustee, and Trustee is hereby authorized, empowered and directed, to sell the premises or any part thereof (in one or more parcels) at public sale to the highest bidder for cash in compliance with all of the then applicable requirements of North Carolina law governing the exercise of powers of sale contained in deeds of trust. Trustee shall commence such foreclosure proceedings, give such notices, obtain such findings or leave of court, advertise the time and place of such sale and conduct the sale in such a manner as may then be required by applicable law. Upon such sale, the Trustee shall collect the proceeds of sale and convey title to the portion of the premises sold to the purchaser or purchasers thereof. Trustee shall apply the proceeds of sale in the following order of priority:

A.  To pay all costs and expenses incident to the foreclosure sale, including a commission for the Trustee's services as set forth below and including the reasonable attorneys' fees actually incurred by Trustee for legal services actually performed;

B.  To pay all taxes or assessments then constituting a lien against the premises other than those advertised and sold subject to;

C.  To pay the Secured Obligations and other obligations secured by this Deed of Trust; and

D.  The balance to the person or persons entitled thereto, to the Clerk of Court of the county in which the foreclosure proceeding is instituted, or as then may be authorized or directed by applicable law.

For a completed foreclosure, Trustee's commission shall be the greater of 5% of the gross sale proceeds or $250. If foreclosure is commenced but not completed, Grantor shall pay Trustee all costs and expenses incident to the foreclosure, including a Trustee's commission equal to (i) 2.5% of the outstanding balance of all obligations secured by this Deed of Trust if the Trustee has filed a notice of hearing but the foreclosure proceeding is terminated prior to any hearing then required by applicable law, (ii) 3.75% of the outstanding balance of all obligations secured by this Deed of Trust if the foreclosure proceeding is terminated after such hearing but before any sale under the Deed of Trust, and (iii) 5% of the outstanding balance of all obligations secured by this Deed of Trust if the foreclosure proceeding is terminated at any time after such sale but before the foreclosure is completed, together with reasonable attorneys' fees incurred by Trustee for legal services actually performed to the date of such termination and reasonable attorneys' fees, if any, as provided in the Secured Obligation. All such costs and expenses and Trustee's commission shall constitute a lien on the premises immediately upon the Lender's request of sale.

19.  **Notices.**  Notices required or permitted by this Deed of Trust must be given in writing. Any notice to Grantor shall be deemed given when (i) mailed by first class or certified mail to Grantor at an address Lender has for Grantor in Lender's records, or (ii) when actually received by Grantor, whichever first occurs. Notice to any Grantor shall constitute notice to all Grantors.

Any notice to Lender shall be delivered or mailed to Lender at Lender's address stated in this Deed of Trust but will not be deemed "given" until the notice is actually received by Lender's Loan Servicing Department.

**20. Release.** Upon payment in full of the Secured Obligations and all other sums secured by this Deed of Trust, Lender or Trustee shall cause the cancellation of this Deed of Trust. Grantor shall pay any recording fees incident to such cancellation.

**21. Substitution of Trustee.** Lender may, from time to time and without notice to Grantor, remove any Trustee or substitute trustee and appoint a successor trustee or trustees by an instrument recorded in the Office of the Register of Deeds of the county in which this Deed of Trust is recorded. Without conveyance of the premises, each successor trustee shall succeed to all the rights, title, powers and duties conferred upon Trustee herein and by applicable law.

**22. No Waiver.** No waiver by Lender of any default shall operate as a waiver of any other default or of the same default on a future occasion. No delay or omission by Lender in exercising any right, option, power or remedy shall impair any such right, option, power or remedy or operate as a waiver thereof. Any such right, option, power or remedy may be exercised from time to time as often as Lender may deem expedient.

**23. Terms; Governing Law.** Each reference to "Grantor," "Trustee," "Borrower" and "Lender" herein shall include, individually and collectively, jointly and severally, all parties so designated, whether one or more and whether individual, corporate or otherwise, and their respective heirs, personal representatives, successors and assigns. Such references shall include the singular, plural, masculine, feminine or neuter as the context may require. The term "Lender" shall include any lawful owner or holder of any of the Secured Obligations, whether one or more. This Deed of Trust will be governed by, construed and enforced in accordance with federal law and the laws of the State of North Carolina.

IN WITNESS WHEREOF, each of the undersigned has hereunto set his or her hand and seal or caused this Deed of Trust to be signed and sealed in its name by a person or persons duly authorized, all as of the date of this Deed of Trust.

| | | |
|---|---|---|
| _____ (SEAL) | Richard W. Finding (SEAL) | |
| Name of corporation, partnership, L.L.C., etc. | Richard W. Finding | |
| By:_____ (SEAL) | Juanita L. Finding (SEAL) | |
| Title:_____ | Juanita L. Finding | |
| By:_____ (SEAL) | _____ (SEAL) | |
| Title:_____ | _____ (SEAL) | |

SEAL-STAMP   STATE OF NORTH CAROLINA, COUNTY OF _Catawba_

I, _Mary E. LaBarbera_, a Notary Public in and for said County and State, do hereby certify that Richard W. Finding and Juanita L. Finding personally appeared before me this day and acknowledged the due execution of the foregoing instrument.

WITNESS my hand and notarial seal, this the _31_ day of _____.

My Commission expires:
_3-13-2011_                              Notary Public

## UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## SHELBY DIVISION

| | |
|---|---|
| **IN RE** | ) **Case No. 10-40125** |
| | ) **Chapter 13** |
| | ) |
| **Richard Warren Finding and** | ) **NOTICE OF** |
| **Juanita Leatherman Finding,** | ) **OPPORTUNITY FOR HEARING** |
| | ) (No-Protest Notice: No Hearing |
| **Debtors.** | ) Will Be Held Unless Request |
| | ) For Hearing Is Filed) |

**TAKE NOTICE** that Peoples Bank has filed papers with the Court to Motion for Adequate Protection and to Modify Stay.  A copy of these paper(s) are included with this Notice or copied on the reverse side of this Notice.

<u>**Your rights may be affected.**</u>  **You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case.  If you do not have an attorney, you may wish to consult one.**

If you do not want the Court to order relief sought in motion, or if you want the Court to consider your views on the motion, then on or before April 30, 2010, or fifteen days from the date of date of this Notice, you or your attorney must do three (3) things:

1.     **File with the Court a written response in accordance with Local Rule 9014-1(f)** <u>**requesting that the Court hold a hearing**</u> **and explaining your position.  File the response at:**

> U.S. Bankruptcy Court
> P.O. Box 34189
> Charlotte, NC 28234

If you mail your request to the Court for filing, you must mail it early enough so the Court will **receive** it on or before the date stated above.

2.     **On or before the date stated above for written responses, you must also mail or fax a copy of your written request to:**

> William Walt Pettit
> Rogers Townsend & Thomas, PC
> 2701 Coltsgate Road, Suite 300
> Charlotte, N.C. 28211
> Fax No. (704) 442-8453

3.     **Attend the hearing scheduled for Friday, May 28, 2010, at 9:30 a.m.** in United States Bankruptcy Court, 100 Justice Place, Shelby, N.C. 28150.

If you or your attorney do not take these steps, **A HEARING WILL NOT BE HELD**, and the

Court may decide that you do not oppose the relief sought in the motion or objection and may enter an order granting that relief.

This the __14__ day of April, 2010.

Rogers Townsend & Thomas, PC
Attorneys for Peoples Bank

By: _____
William Walt Pettit
NC Bar No.: 9407
2701 Coltsgate Road, Suite 300
Charlotte, N.C. 28211
Telephone: (704) 442-9500

853.0000195                    UNITED STATES BANKRUPTCY COURT
                              WESTERN DISTRICT OF NORTH CAROLINA
                                      SHELBY DIVISION

IN RE                                    ) Case No. 10-40125
                                         )
Richard W. Finding and                   ) Chapter 13
Juanita Leatherman Finding,              )
                                         )
                                         )
                        Debtors.         )
                                         )

---

## CERTIFICATE OF SERVICE

I, as attorney of record for Peoples Bank, hereby certify that on the 8th day of April, 2010, I served
a copy of the Motion for Adequate Protection and to Modify Stay and Notice of Opportunity for Hearing by
either electronic notice in accordance with the local rules or by depositing the same, enclosed in a postpaid,
properly addressed wrapper, in an official depository under the exclusive care and custody of the United
States Postal Service, said envelope being addressed as follows:


Richard Warren Finding                   Debtors
Juanita Leatherman Finding
P.O. Box 506
Casar, N.C. 28020


T. Bentley Leonard, Esq.                 Attorney for the Debtors
274 Merrimon Avenue
Asheville, NC 28801


Steven G. Tate, Esq.                     Trustee
P.O. Box 1778
Statesville, NC 28677


One West Bank
6900 Beatrice Drive
Kalamazoo, MI 49009


Indymac Bank
6900 Beatrice Drive
Kalamazoo, MI 49009

Rogers Townsend & Thomas, PC
Attorneys for Peoples Bank

By: _____
    William Walt Pettit
    NC Bar No.: 9407
    2701 Coltsgate Road, Suite 300
    Charlotte, N.C. 28211
    Telephone: (704) 442-9500